# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,	CR. NO. 17-20456
	HON. LINDA V. PARKER

    Plaintiff,

v.

AMOR FTOUHI,

    Defendant.
_____/

## REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO COMPEL DISCLOSURE OF CONTACT INFORMATION

Amor Ftouhi is not seeking to gain a "trial advantage," as the government states. (R. 20, Gov't Resp., PageID #68.)  He is simply seeking to level the playing field.  The government has at its disposal multiple U.S. law enforcement agencies, the assistance of Canadian law enforcement, and myriad other resources.  Since filing charges, the government has been searching near and far for any connection between Mr. Ftouhi and an international terrorist organization.  The defense does not know whom government agents have contacted in search of terrorist ties or what they have learned. To date, the defense does not know how many people in the United States, Canada, or elsewhere the government has talked to about Mr. Ftouhi.

In order adequately to represent Mr. Ftouhi during pre-trial proceedings, at trial,

and at any potential sentencing hearing, counsel needs this limited information in order to competently and effectively represent Mr. Ftouhi: the names and contact information of persons the government has contacted to investigate Mr. Ftouhi. Those people may have exculpatory evidence, information relevant to a suppression motion, mitigating evidence, or evidence that Mr. Ftouhi has no relationship with any international terrorist organization whatsoever.

### A. This Court has broad discretion to order discovery not covered by Rule 16 or the Constitution.

District judges possess "wide discretion in controlling discovery proceedings under Fed. R. Crim. P. 16." *United States v. Armes*, 470 F.2d 1353, 1355 (6th Cir. 1973). Rule 16 "is intended to prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant." *United States v. Richards*, 659 F.3d 527, 543 (6th Cir. 2011). And the "regulation of discovery in criminal matters is committed to the discretion of the trial court." *United States v. Sherlin*, 67 F.3d 1208, 1218 (6th Cir. 1995). For that reason, courts of appeals review these discretionary decisions for only an abuse of discretion. *See United States v. Thorpe*, 471 F.3d 652, 657 (6th Cir. 2006).

### B. There are compelling reasons to order the government to produce the names and contact information.

District courts should exercise such discretion when the defendant presents a "compelling need" to do so. *United States v. Slough*, 669 F. Supp. 2d 51, 59 (D.D.C. 2009). There was such a compelling need in *Richards*, where the government produced

more than 20,000 computer files, including illicit images.  659 F.3d at 543–44.  The district court ordered the government to provide defense counsel with an exhibit list and to "preview with defense counsel the images it would show to the jury." *Id.* at 544. The district court did so because it was "impossible to know, in advance, whether the images had been previously identified by the government."  *Id.*  The district court also ordered the government to preview the images it planned to show to the jury, to allow the defense to be better prepared to address those specific issues at trial.  *Id.*

Similarly, here, Mr. Ftouhi is asking for the contact information of the people named in discovery (who may or may not be witnesses) in his case.  The absence of this information will stack the deck against the defense in preparing for trial.

**C. The government has not offered any compelling reason to deny Mr. Ftouhi a list of witness names and contact information.**

The government contends this is a simple case to investigate and prepare (R. 20, Gov't Resp., PageID #75), while ignoring the fact that its investigators have searched far and wide since the morning of June 21st for evidence of Mr. Ftouhi's connections to international terrorism.  Potential witnesses are not located only in Michigan; they reside in Canada, and potentially Tunisia or other countries.  Moreover, the government offers no reason to believe a defense investigator can track down every person who was present in Flint International Airport on June 21st, let alone every person the government has found who may have had contact with Mr. Ftouhi as he travelled from Montreal to Flint.

3

Next, the government turns to scare tactics and vague concerns about witness safety. (*See* R. 20, Gov't Resp., PageID #75–78.) Of course, the government ignores the obvious counterargument: Mr. Ftouhi is incarcerated pending trial. He has no possible way of personally locating or contacting any potential witnesses. The government monitors all of his non-privileged phone calls, and so is capable of responding should Mr. Ftouhi pass along this contact information to anyone who does not belong to his legal defense team. If Mr. Ftouhi had an email account or had any access to the Internet (which he does not), the government would monitor that, too.

In addition, the government suggests members of Mr. Ftouhi's legal team might share witness contact information with his "friends, family or [unidentified] like-minded supporters" in violation of the stipulated protective order. (R. 20, Gov't Resp., PageID #76.) The Court can rest assured that the investigators and attorneys will not spurn an order of the Court, and if they do, the government has appropriate recourse.

Finally, the government asserts that witnesses will be "retraumatized" if any member of the defense legal team contacts them. (R. 20, Gov't Resp., PageID #76–77.) To start, witnesses—particularly those who were not in the Flint airport on June 21—are certainly not victims by any definition, let alone under 18 U.S.C. § 3771(e)'s definition. Moreover, representatives of the Federal Defender Office are professionals. If a witness does not wish to speak with any member of the legal defense team, he or she can say so, and that will be the end of the matter.

4

D. **The government's *Brady* obligations include the duty to disclose information that may benefit defendants pretrial or at sentencing.**

The government insists the Due Process Clause does not compel the disclosure of witness names and contact information because this information is only inculpatory. (R. 20, Gov't Resp., PageID #68.) In making this assertion, the government reveals a misunderstanding about its *Brady* and *Giglio* obligations: The Due Process Clause requires not only production of exculpatory evidence for trial, but also production of evidence that may lead to the exclusion of evidence or information that may mitigate Mr. Ftouhi's culpability if he is convicted.

The criminal justice system "suffers when any accused"—guilty or innocent—"is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963). Thus, a prosecutor who "withholds evidence on demand of an accused which, if made available, would tend to . . . reduce the *penalty*." *Id.* (emphasis added). For these reasons, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt *or to punishment*, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87 (emphasis added). And favorable evidence includes evidence that undermines the credibility of a testifying police officer—particularly when the credibility of the officer is at issue. *Giglio*, 405 U.S. at 154–55.

The logic of *Brady*, *Giglio*, and their progeny, apply with equal force at a suppression hearing and sentencing. The Supreme Court and Sixth Circuit have

5

expressly held that the government has an obligation to disclose evidence material to sentencing. *See, .e.g.*, *Strickler v. Greene*, 527 U.S. 263, 296 (1999) ("[P]etitioner has not shown that there is a reasonable probability that his conviction or sentence would have been different had these materials been disclosed."); *Jefferson v. United States*, 730 F.3d 537, 554 n.4 (6th Cir. 2013) ("*Brady*'s obligations 'appl[y] to evidence material to sentencing.'" (quoting *United States v. King*, 628 F.3d 693, 704 (4th Cir. 2011)).

The outcome of a suppression hearing inevitably affects whether a defendant will be punished for his conduct at all. Many courts of appeals agree the government's *Brady* and *Giglio* obligations apply to evidence material to the outcome of a suppression hearing.[1] And the Sixth Circuit has implied defendants have a right to *Brady* and *Giglio* material before a suppression hearing. In *United States v. Seymour*, 739 F.3d 923, 927 (6th

---

[1] *See United States v. Gamez–Orduno,* 235 F.3d 453, 461 (9th Cir. 2000) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."); *Nuckols v. Gibson*, 233 F.3d 1261, 1266–67 (10th Cir. 2000) (finding a *Brady* violation where "the prosecution withheld evidence that would have allowed defense counsel the means to test [the police officer's] credibility" where the admissibility of Mr. Nuckols's confession "hinged upon proof" that he initiated the interview); *Smith v. Black,* 904 F.2d 950, 965–66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930 (1992) (holding that the government violated due process when it failed to disclose evidence that would have bolstered the impeachment of a detective who testified at a suppression hearing because the impeachment material would have affected the outcome of the suppression hearing); *Biles v. United States*, 101 A.3d 1012, 1019 (D.C. 2014) ("[T]he suppression of material information can violate due process under *Brady* if it affects the success of a defendant's pretrial suppression motion."). *But see United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *11 (D.N.M. Apr. 11, 2016) ("*Brady* does not require the United States to disclose impeachment evidence before suppression hearings.").

6

Cir. 2014), the court suggested that a defendant may have a viable *Brady* or *Giglio* claim if he or she can offer more than mere speculation to believe police officers manufactured probable cause. Even when suppression does not result in a complete dismissal of charges, it may alter the range of punishments the court may impose. Or an order suppressing evidence may cause the government to offer a more favorable plea agreement. Thus, because evidence material at a suppression hearing may affect the defendant's punishment, the government has an obligation to disclose material and impeachment evidence before a suppression hearing.

Rather than acknowledge these disclosure obligations, the government closes with a familiar refrain: federal prosecutors understand their obligations under *Brady* and *Giglio*. (R. 20, Gov't Resp., PageID #68–69.) But there is a difference between understanding the obligation to disclose evidence and understanding why evidence may be material to the defense. Many federal prosecutors have never worked as criminal defense lawyers. They are accustomed to viewing evidence with an eye to building a case and preserving evidence from suppression, and therefore do not always understand how defense attorneys may view a case or a witness. The fact a prosecutor does not buy the defense theory is not a good enough reason to deny access to documents that may support it.

## CONCLUSION

Mr. Ftouhi requires the contact information of witnesses to prepare for his trial. His request is intrinsically reasonable—particularly because he is willing to agree to a

7

protective order. This Court should therefore grant his motion to compel.

Respectfully Submitted,

s/Joan E. Morgan
s/Colleen P. Fitzharris
Federal Defender Office
Attorney for Defendant
111 East Court Street, Suite L-100
Flint, Michigan 48502
(810) 232-3600
joan_morgan@fd.org
(P34482)

Dated: August 8, 2017

# CERTIFICATE OF SERVICE

On August 8, 2017, I filed the foregoing document using the ECF system, which will send notification of the filing to counsel of record.

s/Joan E. Morgan